## COOK v. BULLETTE.

No. 1684.    Opinion Filed May 14, 1912.

(124 Pac. 59.)

**APPEAL AND ERROR**—Review—Questions of Fact. In 1902, defendant, having a seven-year lease on a 320-acre tract of land in the Indian Territory, assigned it and seven $100 promissory notes to plaintiff in consideration of $400 in cash and plaintiff's note for $300. The land subsequently was allotted to a third party, and plaintiff, failing to get possession under his lease, brought suit to recover the $400 and for cancellation of the note, charging that the lease was void, and that defendant had fraudulently induced him to purchase same. Defendant answered, denying fraud, and charging plaintiff with sole responsibility for bringing about the trade, and further charged that plaintiff had turned back to the maker the seven $100 notes assigned; that he had received only $400 for same, and asked judgment on plaintiff's $300 note. The court held that the burden was on the plaintiff to prove his right to recover the $400 and order of cancellation, and that, as defendant had asked for affirmative relief, the burden was upon him to prove his right to recover on the $300 note. The testimony being in direct conflict, the court held that plaintiff had failed to prove his right to recovery by a preponderance of the testimony, and denied him judgment. Also defendant had failed to prove his right to the affirmative relief prayed for, and ordered the cancellation of the note. The judgment, being based upon conflicting testimony and being reasonably supported by the record, will not be disturbed in this court.

(Syllabus by Harrison, C.)

*Error from District Court, Tulsa County;*
*Jno. H. Pitchford, Judge.*

Action by W. Albert Cook against George Bullette for the sum of $400 and cancellation of note. Judgment for defendant

as to the $400 and decreeing cancellation of note held by defendant, and plaintiff brings error. Affirmed.

This action was begun in the United States Court for the Western District of the Indian Territory, and after statehood transferred to the state courts. The petition alleged, in substance, that on April 30, 1902, defendant had under his control 320 acres of land in excess of what he and the members of his family were allowed to select as allotments; that on said date, in order to evade the penal provisions of the federal statute against holding and controlling more land than he was authorized by law to select as allotments, defendant made a sale of said land to one George Tucker for the sum of $700; whereupon Tucker, who was a citizen of the Cherokee Nation, and who, with the members of his family, were authorized to select the sum of 320 acres, or more, as allotments, and agreeing to do so, executed a lease to the said defendant Bullette, for a term of seven years, at $100 per year, Tucker to execute seven $100 notes to Bullette in payment of the land, but contracted with Bullette in said lease that one of the seven $100 notes should be canceled and turned over to Tucker each year in payment of the rent for said premises.

It further alleged that on the same day Bullette, well knowing said lease to be void, and knowing that plaintiff was a stranger in the country, represented to plaintiff that said lease was valid and binding, and offered to sell same to plaintiff for the sum of $700, $400 in cash and $300 in a promissory note; that plaintiff, relying on such representations, purchased said lease from Bullette on the 30th day of April, 1902, paying Bullette $400 in cash and executing a note for $300, payable July 1, 1903; whereupon Bullette assigned said lease and the said notes of $100 each, which he had received from Tucker, to plaintiff. It was provided in the lease that Bullette should retain possession of the premises and have the crop for the year 1902.

It is further alleged that Tucker never was in actual possession of said lands, or any part of same, and that he never took same for his allotment, or that of his family, but that on about January, 1903, he sold said lands to one Sawney Smith, a Chero-

kee freedman, who immediately took possession of the land and filed thereon, and at the time of the suit was in possession of same, in hostility to the provisions of plaintiff's lease, aforesaid; that in February, 1903, the defendant having failed and refused to put plaintiff in possession of said premises, as provided in said lease, plaintiff sought of Bullette a return of said $400 and the $300 note, aforesaid, and that upon the request of Bullette, he turned the seven $100 notes, which had been assigned to plaintiff by Bullette, back to Tucker; that, defendant having failed to put plaintiff in possession of said premises, and plaintiff, having received no benefit from said lease, because said lease was void, and Bullette well knew same to be void at the time it was procured, and at the time it was assigned to plaintiff, demanded a return of the $400 paid in cash and the cancellation of the $300 note.

Defendant answered, denying that he sold 320 acres to Tucker, but alleged that he sold the improvements thereon to Tucker for the sum of $700, and took Tucker's seven promissory notes of $100 each in payment of such improvements, and that he leased said lands back from Tucker at $100 per year, agreeing that the annual use of the land should be liquidated by a payment of one of said notes each year until all were delivered to Tucker. Defendant admitted that he assigned said lease to plaintiff, but denied that he knew same was void, denied that he knew plaintiff was a stranger, denied that he falsely represented to plaintiff that said lease was valid, denied that he in any way induced plaintiff to take said lease, but alleged that plaintiff brought about the entire transaction himself, and induced Tucker to purchase said improvements from defendant and execute a lease to defendant on such premises, so that defendant could assign same to plaintiff, and agreed and did pay defendant $400 in cash and give his note for the balance, $300, in consideration of defendant's assigning said lease and said notes to plaintiff.

Defendant further alleged that after he had assigned said notes and lease to plaintiff, plaintiff purchased the improvements on said tract from Tucker, giving Tucker in payment there-

for seven $100 notes, which Tucker had given to Bullette, and Bullette had assigned to plaintiff; that such purchase of said improvements from Tucker was made by plaintiff for one Sawney Smith.

Defendant further alleged that the improvements on said land were worth $700, and that he was the owner thereof at the time of sale of same to Tucker, and had the right to sell same, and that the seven $100 notes executed to defendant by Tucker in payment of said premises was a valid consideration.

And for further answer and cross-bill to plaintiff's petition defendant alleged that on said April 30, 1902, he was the owner of the improvements on the tract of land in question, and that the same were of the value of $700; that the plaintiff, through his influence, induced defendant to sell said improvements to George Tucker for the sum of $700 and take in payment seven $100 notes; that defendant also, as security for said notes, took a lease on said land for $700 from Tucker, agreeing to give one note each year for the rent on said premises; that plaintiff afterwards induced defendant to assign said lease and notes to plaintiff for $700, $400 in cash and $300 payable July 1, 1903; that defendant complied with plaintiff's solicitation and entered into said transaction at the solicitation and request of plaintiff, and that after he had assigned said lease and notes to plaintiff, plaintiff turned the notes over to Tucker in payment for the improvements on said premises, with the view of getting one Sawney Smith to select said premises as his allotments, and with the ultimate view of leasing same from Sawney Smith; and that plaintiff, having turned the notes back to Tucker, and defendant having received only $400 for said improvements, and said improvements being worth $700, asked judgment against plaintiff for the amount of the $300 note.

The cause was tried without the intervention of a jury, and judgment rendered, decreeing cancellation of the $300 note, but denying plaintiff a recovery for the $400 paid to defendant, and further decreeing that plaintiff pay the costs of the suit. Plain-

tiff appeals the cause here on seven assignments of error, but urges the following only:

"(1)    That the court erred in overruling the demurrer of plaintiff in error to the answer of defendant in error.

"(2)    That the court erred in overruling the demurrer of plaintiff in error to the cross-complaint set forth in the answer and cross-complaint of the defendant in error.

"(3)    The court erred in refusing to render judgment in favor of the plaintiff in error and against the defendant in error.

"(4)    That the court erred in overruling the motion for new trial of plaintiff in error."

*Charles J. Wrightsman, Charles E. Bush,* and *Victor O. Johnson,* for plaintiff in error.

*Biddison & Campbell,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). As to the first contention, we think the defendant's answer states a valid defense to plaintiff's petition, and that the demurrer thereto was properly overruled. As to the second, the allegations in defendant's cross-petition, if considered as true, and such would be the case as against a general demurrer, would, in our judgment, constitute a cause of action against plaintiff for the recovery of the $300 which defendant, in such cross-petition, claims to be due him on plaintiff's note, and that the demurrer thereto was properly overruled. However, while the first and second contentions are presented, neither of them are argued in plaintiff's brief.

The second and third contentions are properly treated under one, inasmuch as, if the court erred in overruling motion for a new trial, it would constitute error because of the question raised in the third contention. The contention being, or the question involved being, that, if it were a violation of law for defendant to hold and control the 320 acres in question, a sale of same would be void; and that, if defendant fraudulently induced plaintiff to purchase the lease on same, and by false representations led plaintiff to believe that such was a valid and binding lease, and that plaintiff, relying on such repre-

sentations, was thereby induced to purchase said lease, and parted with his money therefor, and executed his note therefor—upon defendant's failure to give possession of the land under the lease, and the turning out that the lease was void and worthless, and that plaintiff received nothing in consideration for his money and note, upon that theory, he should recover back his $400, and obtain an order for the cancellation of said note. Plaintiff in error cites *MacLaughlin v. Ardmore L. &. T. Co.,* 21 Okla. 173, 95 Pac. 779, 32 U. S. St. 641, *Denton v. Capitol Town-Site Co.,* 5 Ind. T. 396, 82 S. W. 852, *Combs v. Miller,* 24 Okla. 576, 103 Pac. 590, and the cases therein cited, in support of his contentions.

It will be conceded that if plaintiff's theory is true the authorities cited are, in a measure, in point, and would, in a measure, be controlling as having settled the question involved. But defendant's answer raises an issue as to the correctness of plaintiff's theory. Plaintiff alleged that defendant sold the land to Tucker, which sale was in violation of law; that, in order to evade the penalties of the law, he pretended to convey only the improvements, receiving therefor the seven $100 notes from Tucker, and that defendant obtained a lease from Tucker which, by false representations, plaintiff was induced to purchase; that plaintiff was inexperienced, being a stranger, and believed such lease to be valid. But defendant answers, alleging that he did not sell the land to Tucker, but sold the improvements only, and alleged and testified that such improvements were worth $700; that he received seven $100 notes in consideration for such improvements, and that, in consideration of said $700, part paia and part to be paid, he assigned said notes and lease to plaintiff; that plaintiff had planned the entire deal himself; that plaintiff was the first to bring up the subject, approached defendant on the subject, and induced defendant to sell the improvements to Tucker, so that Tucker, being allowed under the law to allot the land in question, could therefore execute a valid lease on the premises; and that the sole transaction was brought about by plaintiff's own influence and inducements, with the object of procuring a lease on the land in question. Hence, if defendant's

theory be correct, then he has violated no law, and plaintiff would not be entitled to recover under the rule announced in the authorities cited by plaintiff in error. So the issues being raised in this manner, it devolved, as the court correctly stated in rendering the judgment, upon the plaintiff to prove, by a preponderance of the testimony, the correctness of his theory; and that defendant, in maintaining the theory of his cross-petition to recover on the $300 note, assumed the burden of proving the same by a preponderance of the testimony.

The testimony on the issues raised is very conflicting. In fact, it is in direct conflict. Plaintiff, in his behalf, testified that defendant, by fraud and misrepresentations, induced him to purchase the lease; that defendant knew said lease was void; and that defendant had sold the land to Tucker for the purpose of obtaining the lease from Tucker, so that he could induce plaintiff to purchase same. Defendant, in his behalf, testified that he had never mentioned the subject to plaintiff until plaintiff brought the matter up himself; that plaintiff had suggested the entire plan and directed the entire procedure in the transaction, and induced defendant to enter into such a transaction, promising to purchase the lease and pay $700 for same. There was no conflict in the testimony as to the value of the improvements, but a direct conflict in the testimony relating to the vital question involved.

The court, after hearing all the evidence, in rendering his judgment, sums it up as follows:

"It appears from the evidence that at the time the payment of the said $400 the plaintiff executed to the defendant a note for $300, making the consideration for said lease $700. The plaintiff contends that at the time of the purchase of the lease the defendant stated to him that it was a substantial and lawful lease, and that he relied upon the statements so made by defendant, and that he (the plaintiff) was not familiar with the laws, usages, and customs prevailing in this country at that time; that he was induced to surrender the note so executed by the lessor of the defendant at the instance and request of the defendant. The prayer of the plaintiff is that he have and recover of and from the defendant the $400 by him so paid to the defendant, and that the de-

fendant be required to produce the said note for $300 in court for cancellation.

"It appears from the evidence on the part of defendant that he (the defendant) had sold to one Tucker the improvements upon the lands in question, and had taken from Tucker a seven-year lease, and secured by seven certain promissory notes, each for $100, and that the rents annually upon the place and from the premises were to go to the liquidation of said notes until all had been paid. The defendant denies that at the time, or at any time, did he inform the plaintiff that the lease was valid, and denies that he ever requested the plaintiff to surrender the Tucker notes.

"Judging the credibility of the witnesses, under the theory that the credibility of the witnesses is to be determined from the appearance and manner of the witnesses while testifying, their demeanor while on the stand, their intelligence or lack of intelligence, their candor in testifying, and the means that the witness might have for knowing and being informed of the things about which he gives testimony, and the witnesses testifying in this case all being entire strangers to the court, the court is inclined to give full credence to the matters and things testified to by the witnesses.

"It is incumbent upon the plaintiff to establish, by a preponderance of the evidence, his right to recover the $400, or any part thereof, paid by him to the defendant. * * * It is incumbent upon defendant, before he would be entitled to recover from plaintiff upon said note, to establish his right to recover by a preponderance of the testimony."

Upon this view of the case and of the testimony of the witnesses, weighing the testimony of each witness by the rule announced by the court, the court rendered judgment, decreeing a cancellation of the $300 note and denying plaintiff the right to recover the $400 paid to defendant. It cannot be urged that there is not evidence reasonably tending to support the judgment; and we follow the rule of this court that, where the evidence is conflicting, if there is evidence reasonably tending to support a verdict or judgment of the court below, it will not be disturbed by this court.

The plaintiff's right of recovery was based solely upon the question of fraud. The burden was upon him to prove the acts

constituting the fraud. The evidence was in direct conflict as to the acts. The court heard all the evidence and decided therefrom that the plaintiff had not proved his case by a preponderance of the evidence. On the other hand, defendant's cross-action demanding affirmative relief, the burden was upon him to prove his right of recovery on the $300 note by a preponderance of the evidence. The court heard all of same, and, the evidence being in direct conflict, decided that the defendant had failed to prove his grounds for a recovery by a preponderance of the evidence. It is evident from the record that some one testified falsely; but it is impossible for this court to say who. The trial court had all the witnesses before him, heard their testimony, and, after hearing same, rendered judgment thereon, and, under the oft-repeated rule of this court, as announced above, the judgment will not be disturbed.

The judgment should be affirmed.

By the Court: It is so ordered.