**Alan P. SMITH, Plaintiff and Appellant,**

v.

**Jeril B. WILSON, Bryce K. Bryner, and Carbon County, a body corporate politic, Defendants and Respondents.**

**No. 15385.**

Supreme Court of Utah.

·May 5, 1978.

S. J. Sweetring, Price, for plaintiff and appellant.

Ronald B. Boutwell, Carbon County Atty., Price, George K. Fadel, Bountiful, for defendants and respondents.

HALL, Justice:

Plaintiff brought this action to recover for stenographic services rendered in furnishing copies of the transcripts of the proceedings in three preliminary hearings. The trial court entered a judgment of dismissal on the merits, determining that there was no meeting of the minds and hence no contract, and plaintiff appeals asserting that the said judgment was based on issues outside the pleadings and not supported by the evidence.

Plaintiff (hereinafter "Smith") was appointed [1] by a magistrate to report the separate preliminary hearings of three indi-

1. U.C.A., 1953, 77–15–14 provides for such an appointment in homicide cases and further provides for payment of his fees out of the treasury of the county.

gent persons jointly charged with homicide. Defendants Jeril B. Wilson (hereinafter "Wilson") and Bryce K. Bryner (hereinafter "Bryner") were each appointed to represent one of the indigents and S. J. Sweetring (hereinafter "Sweetring"), who represents Smith on this appeal, was appointed to represent the third.

Smith spent three and one-half days reporting the hearings and thereafter transcribed each of the records. As is the usual practice, he furnished the original and a copy of the transcript of each record to defendant Carbon County (hereinafter "County") and submitted his billing therefor in the amount of $1,335.75 which was paid without question. He also furnished copies of the transcripts to Wilson, Bryner and Sweetring, but billed each of them separately for the sum of $418.18. They in turn submitted the billing to the County which refused to pay those of Wilson and Bryner, although it did reimburse Sweetring for his. That refusal to pay precipitated this lawsuit brought to recover the sum of $836.36 which represents the total of Wilson's and Bryner's billings.

A review of Smith's pleadings reveals no specific allegation of a contractual relationship with any of the defendants, and it was his contention at trial, and also on this appeal, that the only issue framed by the pleadings was the reasonableness of his charges. To adopt his contention one must assume that a contract did in fact exist to furnish the additional copies of the transcripts, and this the trial judge declined to do. On the contrary, in the absence of a sufficient showing that a contractual agreement existed, he dismissed the complaint as it was his prerogative to do.

The very basic standard of appellate review [2] which precludes us from substituting our judgment on factual issues for that of the trial judge, is applicable in this case.

■ The record before us adequately supports the conclusion that no contract existed to furnish or pay for copies of the transcripts. Specifically in regard to any contractual liability of the County, Smith presented no evidence whatsoever of the existence of such a contract. Also, it is to be noted that the county's prior statutory [3] obligation to compensate Smith for his services as a stenographer had already been discharged by payment of his billing therefor and his acceptance thereof.

■ In regard to any contractual liability of Wilson and Bryner, the record adequately supports the conclusion that there was never a meeting of the minds as would render them liable for payment. They were totally inexperienced in such matters as ordering, using, and paying for transcripts. On the other hand, Smith had some 24 years of experience in the field. No discussion was had as to any personal obligation to pay. In fact, Smith inferred just the opposite and that the County would pay as part of its obligation to bear the expenses incident to the defense of the indigent defendants in the criminal proceeding.

The whole thrust of Smith's case was that the County was ultimately liable for payment and that Wilson and Bryner had no obligation. This is borne out by his testimony at trial as follows:

> . . . my understanding was that Carbon County had hired these men to represent the indigents and that I bill the People that I understood would see that my, my invoices were paid, my bills paid. If I had to look through the attorneys to Carbon County, eventually paying on their behalf, I looked that way.

The findings and judgment are based on substantial, competent, admissible evidence and reasonable inferences to be drawn therefrom, and we will not disturb them.

Affirmed. Costs to defendants.

CROCKETT, MAUGHAN and WILKINS, JJ., concur.

---

2. *Fisher v. Taylor*, Utah, 572 P.2d 393 (1977).

3. Footnote 1, supra.

ELLETT, Chief Justice (concurring with observation):

I concur in the opinion as written by Justice Hall. I wish to add, however, that Mr. Smith perhaps has been overpaid. No complaint is made in that regard and so my comment is of no concern to the ruling in this case but should be kept in mind for future cases. I merely want to point out that our statute provides that the compensation for transcribing stenographic notes is fifty cents ($.50) per *folio*[1] and not $1.50 per *page* as some reporters charge. A folio is defined by statute[2] as being one hundred words. Therefore, a reporter would be entitled to $1.50 per page only if that page contained three folios, or three hundred words.

The average line contains ten words and so the honest reporter would put thirty lines to the page in making his charge of $1.50. Some reporters use twenty-five line pages in order to get a greater rate of pay than that which the statute allows. Mr. Smith used the twenty-five line page and claims that the fee for a copy of a thirty-line page was seventy-five cents ($.75), but that he only charged seventy cents ($.70) per page to allow for the shortage. It would seem that 25/30 of seventy-five cents would be sixty-two and one-half cents ($.625) and not seventy cents as charged.

There is another little error in his calculation. The statute above set out in Note 1 provides that the rate of pay for copies furnished to the party ordering the original shall be ten cents ($.10) per folio, not exceeding two copies.

Carbon County was billed for all the copies and it would seem that the charges would be only ten cents ($.10) per folio or thirty cents ($.30) per page (for a thirty-line page) for the copies; and that is only in case the county had *ordered* the work to be done. Again, the price would not be thirty cents ($.30) for a page of twenty-five lines, but only 25/30 or twenty-five cents ($.25) per page, rather than the seventy cents ($.70) charged.

The appellant claims that, as a free-lance reporter, he is not bound by the statutory charges. That argument was advanced before this Court in the case of *Dull v. Mining Co.*[3] The statute involved at that time provided for a fee of $8.00 per day for reporting and ten cents ($.10) per folio for transcribing the testimony. The reporter was hired for one case only and had an agreement for $10.00 per day for reporting and fifteen cents ($.15) per folio for transcribing the testimony. This Court held the agreement to be void as being against public policy. The reporter, although not the regularly appointed reporter, was held to the rate of pay provided by law for the services rendered.

Our statute[4] provides that the stenographic fees in preliminary hearings shall be paid by the county. Since there is no mention of the amount of such fee, it must be a reasonable fee; and where the statute states the fees of reporters generally, the statutory fee *is* the reasonable fee. A charge exceeding that amount ought not be allowed.

If it be assumed that the court might not be able to secure a reporter unless a fee larger than that set out by statute was permitted, the answer is two-fold. In the first place, the reporter for a preliminary hearing need not be a certified shorthand reporter; and in the second place, the judge can subpoena a reporter just the same as he can bring in a juror, an interpreter, or a witness without making a contract with any of them.

---

1. U.C.A., 1953, 78–56–4.

2. U.C.A., 1953, 21–7–8.

3. 28 Utah 467, 79 P. 1050 (1905).

4. U.C.A., 1953, 77–15–14(5).